IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FRED PEARSON,

        Plaintiff,

vs.                                      CIVIL NO.  10-130 JC/LFG

PROGRESSIVE DIRECT
INSURANCE COMPANY,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on the Motion to Compel Discovery [Doc. 28] and Memorandum in Support thereof [Doc. 29], filed by Plaintiff Fred Pearson ("Pearson") on May 18, 2010.  Defendant Progressive Direct Insurance Company ("Progressive") filed a Response [Doc. 34], and Pearson filed his Reply [Doc. 40].  The motion is now fully briefed.  Oral argument is not necessary.  For the reasons given below, the Motion to Compel is granted in part and denied in part.

## Background

Pearson filed suit against Progressive, contending that he was involved in an automobile collision with Erlynda Aragon, an allegedly negligent driver.  As a result of the accident, Aragon's insurer paid policy limits of $25,000.  Pearson contends that the amount paid was inadequate to compensate him for the injuries suffered.  Thus, he brings a separate action against Progressive, his own insurer, for underinsured benefits.

Pearson claims he suffered bodily injuries, incurred past medical and related expenses in excess of $20,000, and will incur related expenses in the future.  He further alleges that he suffered and will continue to suffer pain and incapacity, loss of income and loss of enjoyment of life.  He

claims damages up to the maximum of his stacked insurance policies. [Doc. 1, Complaint, ¶¶ 7-10]. The complaint was initially filed in New Mexico state district court and was removed to federal court by Progressive. [Doc. 1, Notice of Removal].

On March 25, 2010, Pearson served his First Set of Interrogatories and First Request for Production of Documents on Progressive. [*See* Docs 15, 16].  After requesting and receiving an extension of time to respond, Progressive served responses to both sets of discovery requests on May 3, 2010. [Doc. 28, at 1; *see also* Doc. 26].  Pearson asserts that his attorney attempted to confer in good faith with counsel for Progressive regarding the discovery requests, but the parties were unable to reach accord [Doc. 28, at 2].  Pearson then filed this Motion to Compel.

Pearson asks the Court to overrule Progressive's objections and compel complete responses to Interrogatories 4, 11 and 13, and to compel production of the documents sought in Requests for Production ("RFPs") 4, 5, 14, and 15.  Pearson also contends that Progressive's failure to respond was purposely evasive and not substantially justified, and he asks the Court to award him attorney fees incurred in bringing this Motion.

Progressive contends that its objections are proper and that it has fully responded to Pearson's discovery requests to the extent such requests seek relevant, non-privileged information. It requests that the Court deny the Motion and reject the request for attorney fees.

**Discussion**

Interrogatory No. 4

In Interrogatory No. 4, Pearson asks Progressive to identify all photographs, videos, motion pictures, CDs or DVDs prepared by Progressive, its attorney, insurance carrier, expert, investigator, or any other party on Progressive's behalf regarding the vehicles involved in the collision and

2

regarding "any matter relating to or connected with" this case or the Plaintiff.  [Doc. 29, Ex. 1, at 2].

Progressive objected to this Interrogatory on grounds of attorney-client privilege and work product protection.  Progressive further responded, "Without waiving said objections, all photographs that are in Progressive's possession were provided by Mr. Pearson.  Progressive also has property damage photos of the Jeep." [Id., at 2-3].

Pearson argues that Progressive waived its right to assert these privileges, because it failed to provide a proper privilege log along with its objections which would identify the documents and set forth a rationale for the asserted privileges.  In addition, Pearson contends that the partial response submitted by Progressive, without waiving objection, is inadequate in that it addresses only photographs and does not include reference to any videos, motion pictures, CDs or DVDs, as requested in the Interrogatory.  Pearson further argues generally that material contained in the claims file is not protected by attorney-client privilege or the work product doctrine.

In response, Progressive states that "the insurance adjuster's claims files will contain documents prepared in anticipation of litigation and will contain documents that are protected by the attorney client privilege and work product." [Doc. 34, at 8].  Progressive further asserts that its response to this Interrogatory was sufficient, in that it stated that all photographs in its possession were provided by Mr. Pearson, and further that it has produced "the entire claims file minus those documents set forth in its privilege log." [Id., at 8].

Progressive's Privilege Log [Doc 29, Ex. 3] is quite sparse.  It contains two entries.  The first entry notes the existence of "Face sheet notes – a series of electronic entries made by various claims representatives who handled the case," 35 pages in length.  The stated grounds for withholding these documents are relevancy, work product, attorney-client privilege and privilege for confidential and

proprietary information.   The second entry notes the existence of "Complaint, summons, correspondence from CT corporation, NMPRC and rules of pleading," 36 pages in length.   The stated ground for withholding these documents is because "it is post filing of suit."

Interrogatory No. 4 is a request that Progressive identify and describe any photographs or other sorts of images regarding matters that are clearly relevant to the claims and defenses in this case.   Indeed, Progressive does not argue that the items are not relevant; the only objection raised is based on attorney-client privilege and work product protection.

Progressive appears to argue that its entire claims file is protected from discovery as work product or confidential attorney-client communication; this argument will be addressed in the discussion below.   In Interrogatory No. 4, however, Pearson asks only that Progressive identify and describe photographs and other images prepared by Progressive or its agents.   A simple request for identification of documents is permissible discovery, and neither the work product doctrine nor attorney-client privilege justifies withholding such identification. Potts v. Allis-Chalmers Corp., 118 F.R.D. 597, 601 (N.D. Ind. 1987); Eureka Fin. Corp. v. Hartford Accident & Indem. Co., 136 F.R.D. 179, 185 (E.D. Cal. 1991) ("Hartford's objection to even identifying documents based on the attorney-client or work product privilege is patently improper").

Neither the Court nor Pearson can assess the merit of the privilege claims as to particular photographs or images until the images are identified by Progressive.

In addition, the rules of procedure require that each Interrogatory be answered "separately and fully in writing under oath," unless objections are interposed and the grounds for any objection are "stated with specificity."  Fed. R. Civ. P. 33.  Thus, it is improper for a party to respond to an interrogatory by first stating an objection and then providing partial information, selected at its own

4

whim, and adding that the information is provided "without waiving the objection." This is evasive and unacceptable.

> [A] responding party is given only two choices: to answer or to object. Objecting but answering subject to the objection is not one of the allowed choices . . . [A]nswering subject to an objection lacks any rational basis. There is either a sustainable objection to a question or request or there is not. What this response really says is that counsel does not know for sure whether the objection is sustainable, that it probably is not, but thinks it is wise to cover all bets anyway, just in case. In this court, however, no objections are "reserved" under the rules; they are either raised or they are waived.

Mann v. Island Resorts Dev., Inc., No. 3:08cv297/RS/EMT, 2009 WL 6409113, at *3 (N.D. Fla. Feb. 27, 2009).

While the request for identification of all photographs and images regarding "any matter relating to or connected with the above referenced and numbered cause" appears expansive, Progressive did not lodge an objection based on overbreadth, or any ground other than work product and attorney-client privilege.

The Court therefore overrules the objection to Interrogatory No. 4. Progressive is directed to provide a complete response to this Interrogatory, identifying each photograph, video, motion picture, CD or DVD prepared by Progressive or its agents, regarding the vehicles involved, the Plaintiff, or any matter relating to this litigation. If no such documents/images exist, Progressive should so state, under oath.

Interrogatory No. 11

This Interrogatory seeks the identity and contact information of any person having information concerning any injury or disability of Pearson's which existed before the collision at issue, as well as the substance of the alleged pre-existing injury or disability.

Progressive objects on the basis of attorney-client privilege and work product doctrine. Progressive states further that, "without waiving said objection," it presumes that Pearson, his wife and his treating doctors may have such information.   Pearson counters that, if Progressive plans to argue pre-existing conditions or lack of causation, the identity of persons with information as to Plaintiff's previous injuries or disabilities is relevant and discoverable.

In this Interrogatory, Pearson seeks only the identities and contact information of persons having information relevant to the case; in particular, to the issue of pre-existing injury, which relates to matters of causation and damages.   The identity of persons having relevant information is not protected by the work product doctrine.   Hartman v. Caplan, 115 F.R.D. 599, 601 (N.D. Ill. 1987) ("the name of the appraiser is in no sense the work product of the lawyer").

Again, Progressive responds to this Interrogatory by supplying a bit of information while stating it is doing so "without waiving the objection."   For the reasons discussed above, this is an improper response to an Interrogatory.   The objections are overruled, and Progressive is directed to respond fully to this Interrogatory.

Interrogatory No. 13

In this Interrogatory, Pearson asks Progressive to state whether it has paid any money for medical expenses or property damage to any person or institution, including Pearson, as a result of the collision and, for each such payment, to state the name of the person paid, amount and date of the payment, and the reason for each such payment.

Progressive did not object to this Interrogatory.   It responded by stating that it paid $10,000 in medical payments coverage to Pearson.

Pearson argues that this response is inadequate in that it does not provide all of the information requested in the Interrogatory.   The Court agrees.   Progressive, having raised no

objection to Interrogatory 13, is directed to provide all of the information requested in that Interrogatory.

RFP No. 4

In this Request, Pearson asks Progressive to produce "all photographs, videos, CDs, DVDs, motion pictures, plans, drawings, blue prints, sketches, or diagrams or other writings or documents" prepared by Progressive or its agents, including its attorney, regarding the scene of the collision, vehicles involved in the collision, and any other matter relating to this cause of action. [Doc. 29, Ex. 2, at 3].

Progressive objected to the Request on grounds of attorney-client privilege and work product.  "Without waiving said objections," Progressive further referred Pearson to its responses to Interrogatories 4 and 5.  The response to Interrogatory 5 merely refers to the response to Interrogatory 4.  The response to Interrogatory 4, as noted above, states that "all photographs that are in Progressive's possession were provided by Mr. Pearson.  Progressive also had property damage photos of the Jeep."  [Doc. 29, Ex. 1, at 2-3].

Pearson contends that the privilege log is not adequate to permit identification of specific documents withheld, nor to provide him sufficient information to enable him to assess the applicability of attorney-client privilege or work product protection.  Pearson argues further that even if attorney-client or work product protection would otherwise be applicable, Progressive waived its right to claim a privilege or protection for any withheld documents because of its failure to provide a timely and adequate privilege log.

Pretrial discovery of documents under Fed. R. Civ. P. 34 may be had of material within the scope of Rule 26(b)(1), that is, "any nonprivileged matter that is relevant to any party's claim or

defense."  The phrase "nonprivileged" in the context of discovery is the same concept of privilege used in the law of evidence.  United States v. Reynolds, 345 U.S. 1, 6 (1953).

In this diversity action, the substantive state law of New Mexico on attorney-client privilege applies.  Fed. R. Evid. 501.  "Because the instant action is a diversity action, the substance of the privileges asserted are governed by state law . . . .  However, it hardly needs mentioning that the *procedure* for responding to discovery requests in federal court litigation, including the procedure for the proper assertion of a privilege, is governed by federal law."  Eureka Fin. Corp. v. Hartford Accident & Indem. Co., *supra*, at 182 n.5 (emphasis in original).

The purpose of the attorney-client privilege is to encourage full and frank communication between attorneys and their clients, in the interest of promoting the broader public interest in the observance of law and the administration of justice.  Pub. Serv. Co. of N.M. v. Lyons, 129 N.M. 487, 495, 10 P.3d 166, 174 (Ct. App. 2000).  The privilege belongs to the client.  Rule 11-503(C) NMRA; State v. Armijo, 118 N.M. 802, 817, 887 P.2d 1269, 1284 (Ct. App. 1994).  The party resisting discovery has the burden of establishing the existence of the privilege.  State v. Gallegos, 92 N.M. 370, 378, 588 P.2d 1045, 1053 (Ct. App. 1978).

The work product doctrine is distinct from and broader than the attorney-client privilege, United States v. Nobles, 422 U.S. 225, 238 n.11 (1975); and unlike the attorney-client privilege, federal law is controlling with respect to the work product doctrine even in diversity cases.  Frontier Ref., Inc. v. Gorman-Rupp, 136 F.3d 695, 702 n.10 (10th Cir. 1998).

Although the attorney-client privilege covers only confidential communications between attorney and client and focuses on the relationship itself, the work product doctrine is not limited to communications but "protects both the attorney-client relationship and a complex of individual

interests particular to attorneys that their clients may not share."  In re Sealed Case, 676 F.2d 793, 809 (D.C. Cir. 1982).

The work product doctrine is not accurately termed a "privilege."  The doctrine was first articulated by the United States Supreme Court in the case of Hickman v. Taylor, 329 U.S. 495 (1947), and was incorporated into the Federal Rules in 1970.  See, Fed. R. Civ. P. 26(b)(3) and 1970 Adv. Comm. comment thereto.  The work product privilege exists "to promote the adversary system by safeguarding the fruits of an attorney's trial preparation from the discovery attempts of the opponent.  The purpose of the work product doctrine is . . . to encourage effective trial preparation." United States v. American Tel. & Tel. Co., 642 F.2d 1285, 1299 (D.C. Cir. 1980).

The party seeking to assert the work product doctrine as a bar to discovery has the burden of establishing that it is applicable.  Barclaysamerican Corp. v. Kane, 746 F.2d 653, 656 (10th Cir. 1984).  The work product doctrine "protects only that which was prepared in preparation for litigation."  Vargas v. United States (In re Grand Jury Proceedings), 727 F.2d 941, 945 (10th Cir. 1984).  It does not protect facts contained with the work product but rather is meant to provide protection for an attorney's legal impressions and strategies.  Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995).

To come within the work product protection, a document must have been "prepared in anticipation of litigation or for trial" by or for a party, or by or for that party's representative.  Fed. R. Civ. P. 26(b)(3)(A).  A document prepared in the regular course of business or for business advice, rather than in anticipation of litigation, is not work product.  In re Grand Jury Proceedings, 156 F.3d 1038, 1042 (10th Cir. 1998).  The fact that a matter might conceivably end up in litigation someday is not the appropriate test.  "While one might argue that almost all of the work attorneys do, or the advice they dispense, is in anticipation of litigation or its avoidance, the work product

immunity requires a more immediate showing than the remote possibility of litigation." <u>Garfinkle v. Arcata Nat'l Corp.</u>, 64 F.R.D. 688, 690 (S.D.N.Y. 1974).

The work product protection is not absolute.  It may be waived, <u>In re Qwest Commc'ns Int'l, Inc.</u>, 450 F.3d 1179, 1186 (10th Cir. 2006); and disclosure may be had of work product material upon a showing of substantial need and inability to obtain the material or its equivalent by other means. Fed. R. Civ. P. 26(b)(3)(A).

Progressive asserts both attorney-client privilege and work product protection for the materials sought by Pearson in RFP No. 4.  When a party seeks such protection, it must supply a privilege log, as set forth in <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), otherwise known as a "Vaughn index."  The federal rules provide:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must . . . describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A).

When a party claims a privilege or work product protection without supplying the necessary privilege log, the Court may in its discretion determine that the party has waived the claim of privilege or protection.  <u>Peat, Marwick, Mitchell & Co. v. West</u>, 748 F.2d 540 (10th Cir. 1984); *see also*, <u>Nolan v. United States</u>, 423 F.2d 1031, 1038 (10th Cir. 1970) (a party waives a privilege by failing to properly invoke it).

This Court could, in its discretion, hold that Progressive waived its right to assert attorney-client privilege and work product protection by its submission of an inadequate privilege log and its attempts to assert a vague, blanket privilege for unidentified documents and other materials.

10

> The purpose of the specific objection requirement is to provide the party seeking discovery with a basis for determining what documents the party asserting the privilege has withheld. Otherwise, how could this opposing party ever know whether the documents withheld under a blanket privilege objection were withheld correctly, incorrectly, or maliciously? Hartford would have the court believe that an opposing party must simply trust the good faith and diligence of the party asserting the privilege . . . .  All too often, the blanket privilege is asserted by counsel who have not carefully reviewed the pertinent documents for privilege. In an abundance of caution, counsel withhold documents that are not privileged, thus defeating the full and fair information disclosure that discovery requires.

Eureka Fin. Corp. v. Hartford Accident & Indem. Co., *supra*, at 183 & n.9.

In responding to a Request for Production, the defendant corporation in Peat, Marwick, Mitchell & Co. v. West, *supra*, "filed a response in which it objected generally that certain unspecified materials sought were subject to the attorney-client privilege, work product protection, or were in other protected categories . . . .  Nothing in the response identifies what these documents are."  Id., at 541.  The court held the response to be "entirely inadequate" and found that the defendant waived its right to object on privilege or work product grounds:

> [T]he party interposing an objection has the burden of establishing its claim of privilege or protection; a baldfaced assertion is insufficient . . . .  Here, the Peat, Marwick defendants' failure to comply with Rule 34 constitutes a waiver of any objection, and their failure to bring forward facts sufficient to establish their purported claims of privilege and protection renders their objections substantively inadequate.

Id., at 541-42.

In this case, Progressive submitted a privilege log along with its responses to Pearson's Interrogatories and RFPs.  As noted above, the log contains only two entries.  The description of documents in each entry is vague and gives no clue as to which Interrogatory or RFP is involved. In finding a that the defendant waived its right to assert attorney-client privilege and work product

protection by a general, "blanket" assertion of privilege, the court in <u>Eureka Fin. Corp.</u>, *supra*, noted that "Hartford failed to comply with a well settled requirement of specifically identifying the evidence to which a privilege applies.  Moreover, in its papers filed with this court, counsel cited absolutely no authority to support its contention that 'under federal law, it is not a requirement that counsel claiming privilege list each and every document.'" <u>Id.</u>, at 185.

"[T]he party seeking to assert the attorney-client privilege or the work product doctrine as a bar to discovery has the burden of establishing that either or both is applicable." <u>Peat, Marwick</u>, *supra*, at 542.  "Parties objecting to discovery on the basis of the attorney-client privilege bear the burden of establishing that it applies . . . .  To carry the burden, they must provide sufficient information to enable the court to determine whether each element of the asserted privilege is satisfied." <u>Lewis v. UNUM Corp. Severance Plan</u>, 203 F.R.D. 615, 621 (D. Kan. 2001).

With respect to the attorney-client privilege, the party asserting the privilege must show that the material sought constitutes a "confidential communication made for the purpose of facilitating the rendition of professional legal services to the client."  Rule 11-503(B), NMRA.

With respect to the work product doctrine, a judge in this district describes what must be shown in order to determine whether the doctrine applies:

> Courts consider several factors in determining whether documents were actually prepared *because* a party anticipated litigation.  These include: (i) whether similar documents are routinely prepared in similar situations in the regular course of business . . .; (ii) whether they were prepared before a lawsuit was filed; (iii) whether they were prepared by or at the direction of an attorney who would actually try the case if litigation should develop; (iv) whether the reports are impartial as between the parties, *i.e.,* whether they were designed to be adversarial or investigative in nature; (v) whether the documents fix the opposing party's theory of the case to be used at trial; and (vi) whether the reports are solely the result of the opposing party's own investigative work or whether they also contain evidence the requesting party submitted.

Trujillo v. Bd. of Educ. of the Albuquerque Pub. Sch., Nos. 02-1146 JB/LFG, 03-1185 JB/LFG, 2007 WL 1306593, at *7 (D.N.M. Mar. 12, 2007).  It is up to the party seeking the protection to supply the court with enough information to make the above determinations.

In this case, Progressive failed to meet that burden.  It did not, however, completely ignore the privilege log requirement.  The log it submitted was simply inadequate.  Therefore, the Court strikes the balance between the interest of the plaintiff in full disclosure, and the interest of the defendant in protecting what may be privileged information, by giving Progressive a final opportunity to supply the necessary information in support of its claim of privilege and protection with respect to RFP No. 4.

Progressive is directed to submit a revised Vaughn index within 15 days of the date of this Order.  The revised index must list each individual document or image as described in RFP No. 4, including electronic documents or images, for which Progressive claims attorney-client privilege or work product protection.  For each entry in the Vaughn index, Progressive must give a description of the image or document, the purpose for which it was produced, the date it was produced, the stage the investigation had reached at that time, the name and job title of the person who created it, whether an attorney was involved in its creation, to whom it was provided, and a detailed statement as to the specific claim of privilege or protection being asserted and the rationale therefor.

If, in the process of preparing the revised Vaughn index, Progressive determines that any documents or images were previously withheld in error, it shall supply those documents to Pearson.

After receiving the revised index and any other production in connection with RFP No. 4, if Pearson wishes to file a new Motion to Compel, he must comply with the time limits set forth in Local Rule D.N.M.LR-Civ 26.6, and file a new Motion to Compel within 21 days of receipt of the Vaughn index.

RFP No. 5

In this RFP, Pearson asks that Progressive produce all medical records, medical statements and bills for treatment rendered to Plaintiff and submitted for payment under Plaintiff's med-pay coverage, as well other documents indicating which medical bills were paid and the amounts and dates of payment under Plaintiff's med-pay coverage, as related to the collision at issue in this case.

Progressive objected to this RFP on grounds of attorney-client privilege and work product protection. In addition, it objected to the RFP as overly broad, vague and irrelevant to the issues in the case.

The Court overrules the objection to RFP No. 5 based on attorney-client privilege and work product protection. The privilege log is inadequate and does not fulfill Progressive's burden of showing the existence of the privilege and protection asserted; indeed, the privilege log does not even mention medical records or medical bills.

In addition, the Court finds that the request is not overly broad, nor is it vague. The RFP asks for a specific set of medical bills for a specific individual arising from a specific automobile collision occurring on a specific date. It seeks to discover which medical bills were paid by Progressive under Plaintiff's med-pay coverage. The Court finds the information to be relevant to the issues herein and not overly burdensome for Progressive to gather. The objections are overruled and Progressive is directed to supply the documents requested.

RFP Nos. 14 and 15

In RFP No. 14, Pearson asks Progressive to produce all correspondence, notes, memoranda, emails, or other documents to any adjuster, claims representative, employee or agent of California Casualty (the insurer of the other party involved in the collision), or any other insurance company, "including to or from their attorneys relating to Plaintiff."

14

In RFP No. 15, Pearson seeks "the complete claims file and all documents of Progressive and all of the its agents, adjusters, employees and attorneys relating to Fred Pearson and/or the subject collision of October 7, 2008," which were gathered, generated or dated prior to May 13, 2009, the date Progressive was advised that Plaintiff was represented by counsel.

Progressive objected to both of these RFPs on grounds they are overly broad, vague, irrelevant to the issue, and because they seek attorney-client and work product materials, and "documents contained in the claims file."

The parties disagree as to the discoverability of an insurance company's claims file. Pearson argues that an insurance company cannot protect its entire claims file as "work product," in that much of the file is prepared in the ordinary course of its insurance business rather than in anticipation of litigation. Progressive argues that the insurance adjuster's claims files "will contain" documents prepared in anticipation of litigation and "will contain" documents protected by the attorney client privilege and work product. [Doc. 34, at 8]. Progressive further states that it did in fact produce for Pearson the entire claims file, "minus those documents set forth in its privilege log." [Id.]. Pearson contends this is a misstatement.

Courts are divided on discoverability of an insurance company's claims files. As noted above, the work product doctrine protects only materials prepared in preparation for litigation, as the purpose of the doctrine is to protect an attorney's legal impressions and strategies. The doctrine does not protect facts contained within the work product, nor does it protect material that is prepared in the ordinary course of business.

> An insurance company cannot reasonably argue that the entirety of its claims files are accumulated in anticipation of litigation when it has a duty to investigate, evaluate and make a decision with respect to claims made on it by its insured . . . . Because an insurance company has a duty in the ordinary course of business to investigate

15

and evaluate claims made by its insureds, the claims files containing such documents usually cannot be entitled to work product protection.

Pete Rinaldi's Fast Foods, Inc. v. Great Am. Ins. Cos., 123 F.R.D. 198, 202 (M.D.N.C. 1988).

The Rinaldi court further noted that the federal cases have not been consistent as to whether insurance company claims files constitute work product, some holding that there is no protection until the insurance company actually turns the matter over to an attorney for purposes of litigation, others holding that even the initial investigation an insurance company performs of an accident or claim is almost always done with the probable prospect of litigation in mind. Id., at 201-02. The court went on to hold that the insurance company had not provided the evidentiary support necessary to decide the issue, and the court had "no factual basis for concluding that any document in either claims file would be entitled to work product protection." Id., at 203.

The same is true in the present case. Progressive does not provide any support for its claim that the "Face sheet notes" made by various claims representatives (as stated in the first entry of the privilege log), or the other documents vaguely described in the second entry of the privilege log, do in fact meet the requirements of confidential attorney-client communications, nor does Progressive establish that these notes and other documents were produced in anticipation of litigation.

One federal court noted that: "[t]he boundary between claims adjusting materials prepared in the ordinary course of processing claims and work-product prepared in anticipation of litigation evades precise demarcation." Schmidt v. Calif. State Auto. Ass'n, 127 F.R.D. 182, 184 (D. Nev. 1989). Therefore, the court continued, "[t]he connection to possible litigation . . . must be sufficiently concrete so as to provide assurance that the routine claims processing material prepared in the ordinary course of the insurance business will not be immunized from discovery." Id., at 184.

16

Some courts within the Tenth Circuit apply a presumption that an insurance company's claims file is presumptively discoverable in cases involving first-party claims. *See, e.g.*, <u>Western Nat'l Bank of Denver v. Employers Ins. of Wausau</u>, 109 F.R.D. 55, 57 (D. Colo. 1985) ("Rule 26(b)(3) is not intended to protect from general discovery materials prepared in the ordinary course of business.  Insurance companies' factual investigations of claims are included in that rule . . . . This rule also includes investigations by a person who is an attorney but acting in the capacity of an investigator and adjustor for the insurance company"); <u>Stillwell v. Executive Fund Life Ins. Co.</u>, No. Civ. A. 89-A-245, 1989 WL 78159, at * 5 (D. Colo. July 12, 1989):

> The time-worn claims of work product and attorney-client privilege cannot be invoked to the insurance company's benefit where the only issue in the case is whether the company breached its duty of good faith in processing the insured's claim.   Under extraordinary circumstances, and upon a particularized showing of good cause, the Court will entertain a motion for protective order to preclude the dissemination of particular information contained in the file.  In the absence of such an exception, the general rule in cases of this nature should be that the plaintiff is absolutely entitled to discovery of the claims file. [*Quoting from* <u>Silva v. Fire Ins. Exch.</u>, 112 F.R.D. 699, 699-700 (D. Mont. 1986)].

In this case, Progressive provides nothing concrete to connect the withheld material to anticipated litigation; indeed, Progressive does not even concretely identify the material it is withholding.  Furthermore, there is nothing on the record to establish that any withheld material constitutes confidential attorney-client communications.  Progressive has the burden of justifying its request for protection from discovery, and it failed to meet that burden.

The Court finds that the requests made in RFP Nos. 14 and 15 are not vague nor overly broad, and that the material sought is relevant to the claims and defenses herein.  Progressive's objections on those grounds are overruled.

17

However, as with RFP No. 4, the Court finds it appropriate to give Progressive another opportunity to comply with the requirements for asserting attorney-client privilege and work product protection with respect to items requested in RFP Nos. 14 and 15. It is conceivable that Progressive can make out a case for protection of some material within the claims file.

Progressive is therefore directed to include within its revised Vaughn index a list of each document described in RFP Nos. 14 and 15, including electronic documents, for which Progressive claims attorney-client privilege or work product protection. For each entry in the Vaughn index, Progressive must give a description of the document, the purpose for which it was produced, the date it was produced, the stage the investigation had reached at that time, the name and job title of the person who created it, whether an attorney was involved in its creation, to whom it was provided, and a detailed statement as to the specific claim of privilege or protection being asserted and the rationale therefor.

If, in the process of preparing the revised Vaughn index, Progressive determines that any documents or images were previously withheld in error, it shall supply those documents to Pearson.

After receiving the revised index and any other production in connection with RFP Nos. 14 and 15, if Pearson wishes to file a new Motion to Compel, he must comply with the time limits set forth in Local Rule D.N.M.LR-Civ 26.6.

The Court denies Pearson's request for attorney fees.

## **ORDER**

IT IS THEREFORE ORDERED that Plaintiff's Motion to Compel [Doc. 28] is granted in part and denied in part. Progressive shall answer the Interrogatories 4, 11 and 13, and produce the material sought in RFP No. 5, as directed above, within 20 days of the date of this Order.

IT IS FURTHER ORDERED that Progressive shall serve on Pearson a revised privilege log in the form of a Vaughn index, as described above, with respect to any material sought by Pearson in RFP Nos. 4, 14, and 15 but withheld under claims of privilege or protection.  The Vaughn index shall be served within 15 days of the date of this Order.  Pearson may thereafter file a new Motion to Compel, if necessary, complying with the time limits of the Local Rules of this district.

IT IS FURTHER ORDERED that each party shall pay its own attorney fees in connection with this Motion to Compel.

_Lorenzo F. Garcia_
Lorenzo F. Garcia
United States Magistrate Judge

19